Craig S. Mende
David A. Donahue
Sean F. Harb
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Fax: (212) 813-5901
*Email:* *cmende@fzlz.com*
*ddonahue@fzlz.com*
*sharb@fzlz.com*

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KHALED M. KHALED and ATK ENTERTAINMENT, INC., | ECF CASE |
| *Plaintiffs*, | Docket No. _____ |
| v. | |
| CURTIS BORDENAVE and BUSINESS MOVES CONSULTING INC. DBA BUSINESS CONSULTING, | **COMPLAINT** |
| *Defendants*. | |

Plaintiffs Khaled M. Khaled ("Khaled") and ATK Entertainment, Inc. ("ATK"), by their

undersigned attorneys, Fross Zelnick Lehrman & Zissu, P.C., for their Complaint against

Defendants, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to halt the brazen attempt by trademark pirates,

Defendants Curtis Bordenave and his company Business Moves Consulting Inc. dba Business

Moves, to usurp and trade on the names and trademarks of world-famous entertainer Khaled M. Khaled, known popularly as "DJ Khaled," and his eighteen-month-old son, Asahd Tuck Khaled.

2.      Plaintiff Khaled has enjoyed tremendous success in the United States and beyond as an entertainer, record producer, radio personality, recording label executive, and media celebrity.  Consumers and the public have come to associate him not only with his "DJ Khaled" performing name, but also with his catch phrase WE THE BEST, for which Khaled owns four federal trademark registrations covering a wide array of goods and services.  Plaintiff ATK is a corporation set up to conduct affairs for Khaled's son, Asahd Tuck Khaled, who became instantly famous in his own right upon his birth in October 2016.

3.      Defendants' main business appears to be appropriating and exploiting the renown and goodwill associated with well-known brands and personalities – and, worse still, the names of famous personalities' children.   In this case, Defendants have intentionally targeted Khaled and his son by using and applying to register the trademarks ASAHD, ASAHD COUTURE, A.S.A.H.D A SON AND HIS DAD, and WE THE BEST LIFESTYLE in connection with purported clothing and magazine publishing businesses, and by using Plaintiff Khaled's name and performing name as hashtags to direct internet traffic to Defendants' products.  Tellingly, Defendants have used the distinctive spelling of "Asahd" that Khaled and Asahd's mother chose for their son.

4.      Moreover, Defendants have repeatedly defamed ATK, falsely attacking its reputation and seeking to harm its business through (i) a barrage of communications directed to Haddad Brands, the New York-based licensing agent for children's clothing under the iconic JORDAN brand connected with basketball star Michael Jordan, and (ii) defamatory posts on social media sites such as Instagram and defamatory statements to various media outlets.

Defendants have intentionally timed their attacks to try to maximize both reputational and financial harm to ATK, by interfering with the negotiations between ATK and Haddad Brands to launch an exclusive line of children's apparel co-branded under the ASAHD and JORDAN brands.

5.      To put a stop to Defendants' parasitic conduct and bad-faith acts, Plaintiffs bring this action on the following grounds:  (i) violation of Khaled's and Asahd Tuck Khaled's right of publicity under New York Civ. Rights L. § 50; (ii) infringement of a federally registered trademark and unfair competition in violation of Sections 32(1) and 43(a) of the U.S. Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. §§ 1114(1) and 1125(a); (iii) common law unfair competition and trademark infringement arising under the laws of the State of New York; and (iv) commercial defamation under New York State law.  Plaintiffs seek injunctive relief, damages, both actual and exemplary as authorized by N.Y. Civ. Rights L. § 51, three times Defendants' profits or plaintiff's damages (whichever is greater) and an award of attorney's fees, all as authorized by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and such other relief as the Court deems just and proper.

6.      To remove the cloud over its impending collaboration with the JORDAN brand, Plaintiff ATK also seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that (i) its use of ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks, including without limitation in connection with the JORDAN brand, does not infringe any rights the Defendants purport to have in ASAHD or similar marks, (ii) Plaintiff ATK has not engaged in any acts of unfair competition with Defendants; and (iii) Plaintiff ATK has not violated any other purported rights of Defendants.

## THE PARTIES

7.      Plaintiff Khaled M. Khaled is a resident of the State of Florida residing in Miami-Dade County, Florida.

8.      ATK Entertainment, Inc. is a corporation duly organized and existing under the laws of the State of Florida, with a place of business in Miami-Dade County, Florida.

9.      Upon information and belief, defendant Curtis Bordenave is a resident of Texas residing at 17927 Windflower Way, Dallas, TX 75252, and is the founder and principal of and controls the activities of defendant Business Moves Consulting Inc. dba Business Moves ("Business Moves").

10.     Upon information and belief, defendant Business Moves is a corporation existing under the laws of Mississippi with a place of business at 17927 Windflower Way, Dallas, TX 75252.

## JURISDICTION & VENUE

11.     This action arises under N.Y. Civ. Rights L. § 50, the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, the Declaratory Judgments Act, 28 U.S.C. § 2201, and applicable state and common law.

12.     The Court has original jurisdiction over the subject matter of the Lanham Act claims asserted in this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§1331, 1338(a) & (b). The Court has supplemental jurisdiction over the state unfair competition and related claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a). The Court has diversity and supplemental jurisdiction over the N.Y. Civ. Rights L. § 50 claim and commercial defamation claim under Sections 1332 and 1367(a) of the Judicial Code, 28 U.S.C. §§ 1332(a) & 1367(a).

This Court has jurisdiction under 28 U.S.C. § 2201 to declare the rights of any party seeking a declaration.

13.     Upon information and belief, Defendants regularly do and solicit business within the State of New York; have engaged in conduct outside this state causing injury within this judicial district and state, including without limitation their dissemination of defamatory statements about Plaintiff ATK to one or more New York corporations, have engaged in conduct, including, but not limited to, the marketing, promotion, advertising and sale of products, in this judicial district, causing injury within this district and within the State; have derived substantial revenues from services advertised, promoted, marketed, sold and/or offered for sale within this district and State; and have and should have reasonably expected their acts, including, but not limited to, the marketing, promotion, advertising, sale and/or offering for sale of services in violation of Plaintiff's rights and the making of defamatory statements in violation of Plaintiff ATK's rights under New York law to have consequences within this district and within the State, including, but not limited to, the harm suffered by Plaintiffs complained of herein.

14.     Venue is proper pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events giving rise to the claim, including, but not limited to, Defendant's marketing, promotion, advertising, sale and offering for sale of products in violation of Plaintiffs' rights under New York law and their dissemination of defamatory statements about Plaintiff ATK to one or more New York corporations, occurred in this District and in that Defendant is subject to personal jurisdiction in the State and are therefore deemed to reside in the State.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**A.    Khaled and His DJ KHALED and WE THE BEST Trademarks**

15.    Khaled is one of the best-known producers and performers in the hip hop music industry today.  Many of his recordings have garnered Gold and Platinum status with the Recording Industry Association of America and have won numerous industry awards, including, for example, American Music Awards, ASCAP Awards, and BET Hip Hop Awards.

*Khaled's Registered DJ KHALED Mark*

16.    For many years, Khaled has offered various entertainment- and music-related products and services under the performing name and mark DJ KHALED.

17.    Khaled owns U.S. Trademark Registration Number 5,085,344 for the mark DJ KHALED covering the following goods and services:

> Musical sound recordings; Musical video recordings; Disc jockey services; Entertainment services in the nature of live disc jockey and rap artist personality performances; Arranging, organizing, conducting, and hosting social entertainment events; Master of ceremonies for parties, live musical entertainment performances, and special entertainment and social events; Arranging, organizing and conducting and hosting night club parties; Hosting special entertainment and social events for others.

18.    Khaled's foregoing registration is valid, subsisting, and in full force and effect and serves as *prima facie* evidence of Khaled's ownership and exclusive right to use the DJ KHALED mark for the products and services identified.

*Khaled's Registered WE THE BEST Mark*

19.    *We The Best* is the name of Khaled's second studio record album, released in 2007, and is the title to the first track on the album.

20.    Following the release of his *We The Best* album, Khaled began repeating the phrase "We the Best" in musical recordings, interweaving the spoken words amidst other lyrics

and music. He also began shouting the phrase "We the Best" from the stage at his live performances. As a result of this frequent use of the phrase "We the Best," Khaled's fans grew to associate "We the Best" with him. In a short period of time, Khaled's live performance attendees and fans came to expect Khaled to use and shout out "We the Best" as his signature phrase.

21.    In or around 2010, Khaled founded the WE THE BEST MUSIC GROUP as a recording label, first as an imprint of The Island Def Jam Music Group, then as an imprint of Universal Records' Cash Money Records division. In or around April 2016, the WE THE BEST MUSIC label moved to Epic Records, the major record label owned by Sony Music Entertainment.

22.    WE THE BEST MUSIC is not only a recording label, but also the name of Khaled's management company, music publishing company, music production company, and flagship recording studio.

23.    In or around 2015, Khaled's social media presence gained enormous attention, including on the Snapchat and Instagram sites, where he posted videos and photos of his everyday life scenes and events. Such social media posts, which also include inspirational messages and uplifting comments, gained some two million followers in a short period of time. Followers of his Instagram posts now number over nine million. He has made more than twenty-five thousand Instagram account posts, and his posts and usually receive tens of thousands of views and likes. On Snapchat, Khaled garners three to four million views on each of his Snaps. He has almost four million followers on Twitter.

24.    Most of Khaled's aforementioned social media posts include the tag "wethebestmusic" or #wethebest, by which Khaled's followers identify the posts as originating

with Khaled. WE THE BEST and Khaled are thus one and the same in the minds of his followers, fans, and the consuming public.

25.     In December 2015, Khaled launched his online retail webstore WETHEBESTSTORE.COM, to sell his expanding line of merchandise. The launch of this site was reported in the *Inquisitr* online publication on December 13, 2015, which characterized Khaled's WE THE BEST name as "his ubiquitous phrase."

26.     Khaled has also partnered with many well-known companies for cross-branded WE THE BEST products and services.  For example, in February 2016, Khaled signed with Apple Music, and launched his WE THE BEST RADIO program on the Beats 1 internet music radio station.

27.     Khaled and his WE THE BEST mark have been the subject of and featured in numerous articles in mass media publications, both online and hard copy, including, but not limited to, *Forbes* (November 7, 2014 article titled "How Many Times Can DJ Khaled Say 'We The Best' in 40 Seconds?"), *The New York Times*, *GQ Magazine*, *Billboard*, and *Time Magazine*.

28.     Khaled has appeared on such network television programs as *The Ellen Show*, *Jimmy Kimmel Live*, *Live With Kelly and Ryan*, *The Chew*, *Rachael Ray*, *The Daily Show*, *The Late Show With Stephen Colbert*, *Late Night With Seth Meyers*, and *Good Morning America*. Khaled's WE THE BEST mark has been prominently featured and publicized in these appearances.

29.     As a result of the acclaim garnered by his performance, recording and other entertainment-related services, his enormous social media presence, and the popularity and widespread acceptance of his inspirational sayings, among other things, Khaled's phrase WE

THE BEST, which appears and is used widely in all of the aforementioned media, has become well known across diverse consumer populations.

30.     In addition to his strong common-law rights in the WE THE BEST trademark built up through use, Khaled owns U.S. Trademark Registration Numbers 4,198,000, 5,031,701, 5,032,062, and 5,341,520 for the WE THE BEST trademark, covering the following goods and services:

- Registration Number 4,198,000 covers musical recordings, live musical performance, music production, record production;

- Registration Number 5,031,701 covers headphones, recordings, clothing, disc jockey services; music video production; various entertainment services; music production services;

- Registration Number 5,032,062 covers his online retail clothing store services and his internet radio program; and

- Registration 5,341,520 covers e-cigarette liquid.

31.     Khaled's registrations for his WE THE BEST mark are valid, subsisting, and in full force and effect and serve as *prima facie* evidence of Khaled's ownership and exclusive right to use the mark for Khaled's products and services.  In addition, Registration Number 4,198,000 is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore constitutes conclusive evidence of Khaled's exclusive right to the mark in commerce on or in connection with the services stated in the registration, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

**B.      Asahd Tuck Khaled and ATK**

32.      Plaintiff Khaled and Nicole Tuck welcomed their son Asahd Tuck Khaled to the world on October 23, 2016.  As a result of his father's widespread fame, Asahd, too, became instantly famous, with numerous media outlets reporting his birth.

33.      "Asahd" is a non-traditional spelling of the name "Assad."

34.      Like his father, Asahd has become a social media phenomenon.  His parents obtained the ASAHDKHALED Instagram account for him in January 2017 under the "Asahd Tuck Khaled" user name.  The account was an instant success and now has over 1.8 million followers.  His @AsahdKhaled Twitter Account has more than 47,000 followers.  Asahd has been featured in major publications such as *The New York Times*, *People*, *Time* ("18 Reasons DJ Khaled's Son Asahd Is Already Having a Better Summer Than You"), and *Cosmopolitan* ("Asahd Khaled Was the Best Baby of 2017"), and was the subject of the cover article for *Paper* Magazine's December 2017 issue.

35.      Asahd's immediate rise to fame created numerous opportunities for him.  To protect his interests, his parents formed Plaintiff ATK, which is run separately from their own business affairs.

36.      ATK holds the exclusive right to Asahd's right of publicity, including the right to license his name, portrait and likeness for commerce or trade.

37.      Among the business opportunities presented to ATK on Asahd's behalf is a highly coveted apparel deal with Nike's iconic JORDAN brand associated with NBA Hall-of-Fame basketball player Michael Jordan.  For several months, ATK negotiated a deal with Haddad Brands, the exclusive licensing agent for children's clothing under the JORDAN brand, eventually culminating in an agreement.  The collaboration with the JORDAN brand was

announced in February 2018 and received considerable press attention from media outlets such as *Ebony* magazine, *BET* network, *TMZ.com*, and *Hollywood Unlocked* ("One-Year-Old Asahd Khaled Hits Fashion Runway & Inks Deal With Jordan Brand").  The first pieces of the collection have been released for sale at retail outlets such as Kids Foot Locker.

38.     On April 4, 2018, ATK applied to register the marks ASAHD, ASAHD KHALED and ASAHD TUCK KHALED.  *See* U.S. Application Serial Nos. 87/862,446, 87/862,459, and 87862453.

**B.     Defendants and Their Wrongful Activities**

39.     Defendants Curtis Bordenave and Business Moves appear to be in the business of appropriating names or trademarks popularized by others and attempting to assert trademark rights over them – either for the purpose of unfairly capitalizing on the goodwill associated with the names and trademarks through the sale of t-shirts bearing them, or for the purpose of extracting a large payment from the targets of Defendants' predatory conduct.  For example, among many other trademark filings, Defendants have applied to register the following as trademarks:

- CARDI B – U.S. Application Serial Number 87/621,947:  "Cardi B" is the performing name of Belcalis Almanzar, a well-known rapper and television personality.  Upon information and belief, Ms. Almanzar did not authorize Defendants to use or register this mark.

- STORMI COUTURE – U.S. Application Serial Number 87/816,331:  "Stormi" is the name of the daughter of actress and model Kylie Jenner, Stormi Webster.  Defendant Business Moves applied to register STORMI COUTURE within a month after Ms.

Webster was born. Upon information and belief, Business Moves was not authorized by Stormi's parents to use or register this mark.

- CYNTHIA BAILEY EYEWEAR – U.S. Application Serial Number 87/275,681: Cynthia Bailey is a model and reality television personality who sells eyewear at www.cynthiabaileyeyewear.com. Upon information and belief, Ms. Bailey did not authorize Defendants to use or register this mark.

- CAPITAL CITY GO GO – U.S. Application Serial Number 87/712,688: The Capital City Go-Go is an American professional basketball team in the NBA G League and an affiliate of the Washington Wizards of the National Basketball Association. Upon information and belief, these teams' owners did not authorize Defendants to use or register this mark.

- LAS VEGAS ACES – U.S. Application Serial Number 87/716,727: The Las Vegas Aces are a professional basketball team based in Paradise, Nevada, playing in the Western Conference in the Women's National Basketball Association. Upon information, neither the team's owners nor the WNBA authorized Defendants to use or register this mark.

- CELEBRITY BOXING – U.S. Application Serial Number 87/291,450: Celebrity Boxing was a FOX television show in which celebrities whose careers and/or notoriety had diminished were pitted against each other in exhibition boxing matches. Upon information and belief, neither the producers nor the owners of FOX authorized Defendants to use or register this mark.

- Z 100 – U.S. Registration Number 5,306,012: Defendants have applied to register several popular radio station names and call numbers for use in connection with clothing,

including this one. Upon information and belief, the owners of the radio station did not authorize Defendants to use or register this mark.

- SIRIUS – U.S. Registration Number 5,321,677: Defendants have registered the popular satellite radio station name for use in connection with clothing. Upon information and belief, the satellite broadcaster did not authorize Defendants to use or register this mark.

*Defendants' Misappropriation of ASAHD, WE THE BEST and Related Marks*

40.     Soon after Asahd Tuck Khaled's birth, Defendants set their sights on Plaintiff Khaled and his family. In July 2017, when Asahd was less than one year old, Defendants filed U.S. Application Serial Number 87/529,960 for ASAHD in connection with various clothing items and U.S. Application Serial Number 87/529,865 for ASAHD COUTURE in connection with a variety of fragrance, skincare, and haircare products.

41.     The United States Patent and Trademark Office ("USPTO") has issued Office Actions rejecting registration of Defendants' U.S. Application Serial Number 87/529,960 for ASAHD on the grounds, among others, that it falsely implies a connection with Asahd Tuck Khaled and seeks registration of his name without permission in violation of Sections 2(a) and 2(c) of the Lanham Act, 15 U.S.C. §§ 1052(a), (c). The USPTO explained that "Asahd Khaled is so well known that the public would reasonably assume a connection between the named person and the recited goods. Especially in the instant case where the named person is very well known for his clothing line and the recited items are all clothing items."

42.     Within ten days after filing their first wave of ASAHD applications, Defendants filed Application Serial Number 87/541,379 for WE THE BEST LIFESTYLE based on an alleged intent to use the mark for magazine publishing services.

43.     Shortly after the collaboration with the JORDAN brand was announced, Defendants filed two additional applications intended to invoke ASAHD – Application Serial Number 87/798,432 for ASAHD COUTURE (amended subsequently to A.S.A.H.D. COUTURE) in connection with footwear and other clothing items; and Application Serial Number 87/867,012 for A.S.A.H.D. A SON AND HIS DAD (and design) for various clothing items and other products and services.

44.     Defendants claim to be offering clothing featuring the ASAHD trademark.  For example, their Instagram account shows the following t-shirt:



45.     In an attempt to confuse consumers into believing that there is a connection between Plaintiffs and Defendants' ASAHD clothing and other products and services, Defendants have used the WE THE BEST LIFESTYLE and ASAHD trademarks, Plaintiff Khaled's name and performing name, and various other trademarks and terms associated with Plaintiffs, as Instagram account names and as links and hashtags in Defendants' Instagram posts. For example, Defendants' Instagram post for the ASAHD t-shirt shown above includes the following Instagram account names, links, and hashtags, among others:  @weareasahd, @asahd_couture, #AsahdCouture, #AsahdBrand, #weareasahd, #khaled, #djkhaled, #fatherofasahd, and #wethebestlifestyle.

46.     In various Instagram posts, Defendants have indicated that they have launched or intend to launch their ASAHD brand in New York City, among other major cities.

47.     Defendants have not obtained written consent from Plaintiffs or any representative of the Plaintiffs to use the ASAHD name and mark and the WE THE BEST LIFESTYLE mark.

48.     The goods and services Defendants offer under the ASAHD name and mark and the WE THE BEST LIFESTYLE mark are not provided or approved by Plaintiffs or anyone with authorization from Plaintiffs to engage in such activity.

49.     Defendants' use of WE THE BEST LIFESTYLE began long after Plaintiff Khaled first began using his WE THE BEST mark for a wide variety of products and services and long after the mark became exclusively associated with Plaintiff Khaled.

50.     Defendants' use of ASAHD began only after Asahd Tuck Khaled was born and became famous.

51.     Defendants target consumers who are familiar with and who are customers of Plaintiffs' goods and services.

52.     Defendants are aware of Plaintiffs' exclusive rights in the WE THE BEST mark and ASAHD name and mark, and are aware that use by Defendants of these names and marks violates Plaintiffs' rights.

53.     Notwithstanding the fact that the Defendants have been on actual notice of Plaintiffs' rights, Defendants have continued to utilize the WE THE BEST mark and ASAHD name and mark.

*Defendants' Defamatory and Knowingly False Statements About ATK*

54.     Defendants have attempted to interfere with ATK's business relationship with

Haddad Brands concerning the JORDAN brand by making knowingly false claims about their

purported ownership of the ASAHD brand and Plaintiffs' purported lack of rights in the ASAHD

mark.

55.     For example, on February 16, 2018, Defendant Bordenave wrote to Haddad

Brands on behalf of Defendant Business Moves, and threatened as follows:

> Please stop all use of the trademark Asahd.  Asahd is a trademark of Business
> Moves.  See USPTO trademarks serial numbers. 87529960. , [sic] 87529865 and
> 87798432. It has been brought to our attention that you are working on a brand
> collaboration between Jordan Brand and Asahd Mark.  The use by Jordan Brand could
> cause damage to our brand.

56.     Mr. Bordenave followed up with additional communications to Haddad Brands, in

which he stated that Defendants owned the ASAHD brand and that it would be a "big problem"

if Haddad Brands were to forward with launching its collection of co-branded ASAHD and

JORDAN clothing.

57.     Defendants have also falsely stated to various media outlets that Defendants, not

Plaintiffs, are the true owners of the ASAHD brand, and that Plaintiffs have no right to move

forward with the collection.

C.     <u>Effect of Defendants' Conduct</u>

58.     Defendants' unauthorized use of the WE THE BEST LIFESTYLE mark and

ASAHD name and mark for commercial purposes is damaging Plaintiffs.

59.     Furthermore, Defendants' use of the WE THE BEST LIFESTYLE mark, the DJ

KHALED name and mark, and the ASAHD name and mark (i) is likely to falsely suggest an

association with or approval by Plaintiffs of Defendants' products and services, (ii) is likely to

continue to create confusion, as consumers will assume that Defendants' products and services

are authorized by, endorsed by, associated with, or are otherwise connected with those of Plaintiffs.

60.     Defendants' use of the WE THE BEST LIFESTYLE mark, the DJ KHALED name and mark, and the ASAHD name and mark is intentionally fraudulent, malicious, willful and wanton.

61.     Defendants' claims to Haddad Brands and various media outlets concerning their purported ownership of the ASAHD brand and Plaintiff ATK's purported lack of rights have harmed Plaintiff ATK's business reputation and are false and defamatory.

62.     Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiffs' business and goodwill unless restrained by this Court.

## FIRST CLAIM FOR RELIEF – VIOLATION OF THE NEW YORK RIGHT OF PRIVACY (N.Y. Civ. Rights Law §§ 50-51)

63.     Plaintiff ATK repeats and realleges the allegations set forth in paragraphs 1 through 62 above as if fully set forth herein.

64.     Defendants' use of the name Asahd in connection with their products and services constitutes a use within New York State for advertising purposes and for the purposes of trade.

65.     Defendants' use of the Asahd name is without consent.

66.     Defendants' conduct thus violates N.Y. Civ. Rights L. § 50, a violation for which N.Y. Civ. Rights L. § 51 provides Plaintiff ATK with a cause of action for damages and injunctive relief.

67.     Plaintiff ATK has been damaged as a result of Defendants' violation of N.Y. Civ. Rights L. § 50.  Furthermore, Defendants have profited from their violation, which such profits should be accounted for and disgorged.

## SECOND CLAIM FOR RELIEF – VIOLATION OF THE
## NEW YORK RIGHT OF PRIVACY (N.Y. Civ. Rights Law §§ 50-51)

68.     Plaintiff Khaled repeats and realleges the allegations set forth in paragraphs 1

through 67 above as if fully set forth herein.

69.     Defendants' use of the names KHALED and DJ KHALED and the term

"fatherofasahd" as hashtags to advertise their products and services constitutes a use within New

York State for advertising purposes and for the purposes of trade.

70.     Defendants' use of these names and terms is without consent.

71.     Defendants' conduct thus violates N.Y. Civ. Rights L. § 50, a violation for which

N.Y. Civ. Rights L. § 51 provides Plaintiff Khaled with a cause of action for damages and

injunctive relief.

72.     Plaintiff Khaled has been damaged as a result of Defendants' violation of N.Y.

Civ. Rights L. § 50.  Furthermore, Defendants have profited from their violation, which such

profits should be accounted for and disgorged.

## THIRD CLAIM FOR RELIEF -- FEDERAL TRADEMARK
## INFRINGEMENT (15 U.S.C. § 1114(1))

73.     Plaintiff Khaled repeats and realleges the allegations set forth in Paragraphs 1

through 72 as if fully set forth herein.

74.     In light of Plaintiff Khaled's prior rights in the WE THE BEST mark, Defendants'

offering, advertising and providing of products and services under the WE THE BEST

LIFESTYLE mark is likely to cause confusion, mistake or deception as to the source or

sponsorship of Defendants' products and services.

75.     As a result of Defendants' unauthorized use of a mark that wholly incorporates

Plaintiff Khaled's federally registered WE THE BEST mark, the public is likely to believe that

Defendants' products and services have been approved by Plaintiff Khaled, and such use falsely represents Defendants as being legitimately connected with and/or authorized by Plaintiff Khaled and places beyond Plaintiff Khaled's control his own reputation and ability to control the use of WE THE BEST or the quality of the products or services bearing that mark.

76.     Defendants' infringement and of Plaintiff Khaled's registered mark is willful, intended to reap the benefit of the goodwill of Plaintiff Khaled, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

77.     Defendants' aforesaid conduct is causing irreparable injury to Plaintiff Khaled and to his goodwill and reputation, and will continue both to damage Plaintiff Khaled and deceive and threaten harm to the public unless permanently enjoined by this Court.

78.     Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF -- FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

79.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 78 above as if fully set forth herein.

80.     Defendants' use of WE THE BEST LIFESTYLE for products and services that are related and/or substantially similar to those offered by Plaintiff Khaled under his WE THE BEST mark constitutes a false designation of origin and a false representation as to the origin of Defendants' products and services.

81.     Defendants' use of WE THE BEST LIFESTYLE in connection with their products and services is likely to cause confusion, mistake, or deception as to the source of Defendants' products and services and is likely to create the false impression that those products and services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs.

82.     Defendants' use of the ASAHD name and mark, the KHALED and DJ KHALED names and marks, and the term "fatherofasahd" as hashtags in connection with the promotion, advertising and sale of their products and services is likely to cause confusion, mistake, or deception as to the source of Defendants' products and services and is likely to create the false impression that those products and services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs.

83.     Defendants' actions constitute unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

84.     Defendants' conduct is willful, intended to reap the benefit of the goodwill of Plaintiffs, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

85.     Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public unless enjoined by this Court.

86.     Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF -- UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

87.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 86 above as if fully set forth herein.

88.     Defendants' use of WE THE BEST LIFESTYLE, ASAHD, KHALED, and DJ KHALED, and the term "fatherofasahd," in connection with his products and services is likely to confuse the public as to the origin, source or sponsorship of Defendants' products and services, or to cause mistake or to deceive the public into believing that Defendants' products and services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs, all in violation of Plaintiffs' rights under the common law of the State of New York.

89.     Defendants have been and, unless enjoined by this Court, will continue to be unjustly enriched at Plaintiff's expense.

90.     Defendants' above mentioned activities constitute unfair competition under New York common law.

91.     Defendants conduct has caused and is causing irreparable injury to Plaintiffs will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.

92.     Plaintiffs have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF -- VIOLATION
OF THE NEW YORK DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT (N.Y. Gen. Bus. Law § 349)**

93.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 92 above as if fully set forth herein.

94.     By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.

95.     Defendants' use of WE THE BEST LIFESTYLE, ASAHD, KHALED, and DJ KHALED, and the term "fatherofasahd" in connection with their products and services has the capacity to deceive and is deceiving the public as to the source or sponsorship of Defendants' products and services.  As a result, the public will be damaged.

96.     Defendants' conduct is willful and in knowing disregard of Plaintiffs' rights.

97.     Defendants' conduct constitutes a deceptive trade practice under Section 349 of the General Business Law of the State of New York.

98.     Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.

99.     Plaintiffs have no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF – COMMERCIAL DEFAMATION**

100.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 99 above as if fully set forth herein.

101.    Defendants have disseminated false statements concerning Plaintiff ATK to various third parties, including Haddad Brands and various media outlets, that are defamatory of the reputation of Plaintiff ATK's business.

102.    Defendants disseminated such statements with knowledge that they were false and with reckless disregard of their falsity.

103.    Defendants' conduct has caused and is causing irreparable injury to Plaintiff ATK and will continue to both damage Plaintiff ATK and deceive the public unless enjoined by this Court.

104.    Plaintiffs have no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF – CLAIM FOR
DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

105.    Plaintiff ATK repeats and realleges the allegations set forth in paragraphs 1 through 104 above as if fully set forth herein.

106.    Defendants have claimed that Plaintiff ATK's use and registration of the ASAHD mark is likely to cause confusion with Defendants' purported ASAHD mark. Because of Defendants' actions and demands described herein, there is a substantial controversy between the parties, who have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

107.    Plaintiff ATK's use of the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks in connection with clothing, including in collaboration with Nike

Inc.'s JORDAN brand, does not violate any rights of Defendants, including any rights under Sections 32 or 43 of the Lanham Act, 15 U.S.C. § 1114, 1125(a), or any state infringement or unfair competition laws.

108. Plaintiff ATK is entitled to a declaration that its use of the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks, and any registrations for such marks, in connection with clothing products is not likely to create confusion in the marketplace with and mark owned by Defendants, and that Plaintiff ATK has not violated Sections 32(1) or 43(a) of the Lanham Act, 15 U.S.C. § 1114(a), 1125(a), or applicable state law, nor engaged in any acts that would constitute unfair business practices under applicable law.

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

1. That a permanent injunction be issued enjoining Defendants, jointly and severally, along with their agents, licensees, distributors, attorneys, servants, employees, affiliates and assigns, and all those persons in concert or participation with any of them from:

a. imitating, copying, or making unauthorized use of the WE THE BEST mark, or any colorable imitation thereof, including, without limitation, WE THE BEST LIFESTYLE (the "WE THE BEST Marks");

b. imitating, copying, or making unauthorized use of the KHALED or DJ KHALED names and marks (the "KHALED Marks")

c. imitating, copying, or making unauthorized use of the ASAHD name and mark, or any colorable imitation thereof, including, without limitation, ASAHD COUTURE, A.S.A.H.D., and A.S.A.H.D. A SON AND HIS DAD (the "ASAHD Marks" and collectively, with the WE THE BEST Marks and KHALED Marks, the "Prohibited Marks");

d. importing, manufacturing, producing, distributing, circulating, selling,

offering for sale, advertising, promoting or displaying any product or service bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Prohibited Marks, or any other indicia associated with Plaintiffs;

   e. using any simulation, reproduction, counterfeit, copy or colorable imitation of the Prohibited Marks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product or service in such fashion as to relate or connect, or tend to relate or connect, such product or service in any way to Plaintiffs or to any services sold, manufactured, sponsored or approved by or connected with Plaintiffs;

   f. using any false designation of origin or false description or statement, or performing any act which is likely to lead members of the trade or public to believe that any product or service manufactured, offered, distributed or sold by Defendants is in any manner associated or connected with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

   g. engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of the Prohibited Marks;

   h. applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of the Prohibited Marks or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of the Prohibited Marks, including without limitation WE THE BEST LIFESTYLE, ASAHD, ASAHD COUTURE, A.S.A.H.D. COUTURE, or A.S.A.H.D. A SON AND HIS DAD.

   i. registering, asking any third party to register on their behalf, or assisting

any third party in registering or maintaining any domain name, subdomain name, URL, e-mail address, social media account name or handle, or other electronic identifier that includes, in whole or in part, the Prohibited Marks or any formatives thereof (including misspellings);

j.     owning, renting, purchasing or otherwise obtaining rights to any internet search term that includes in whole or in part the Prohibited Marks or any formatives thereof (including misspellings) for purposes of directing internet traffic to any web site;

k.     using any hashtag that includes, in whole or in part, the Prohibited Marks or any formatives thereof (including misspellings), in any internet post that advertises, promotes, or markets any product or service of Defendants;

l.     assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (k) above.

2.     Directing that Defendants deliver up to Plaintiffs' attorneys for destruction all products, labels, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in his possession or under their control or (b) recalled by Defendants pursuant to any order of the Court or otherwise, incorporating, featuring or bearing the Prohibited Marks or any other simulation, reproduction, copy or colorable imitation of the Prohibited Marks.

3.     Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any product or service manufactured, imported, advertised, promoted, distributed, displayed, produced, sold or offered for sale by Defendants is in any manner authorized by Plaintiffs or related in any way to Plaintiffs.

4.     Directing Defendants to withdraw their U.S. trademark Applications Serial

Numbers 87/541,379 (WE THE BEST LIFESTYLE), 87/798,432 (A.S.A.H.D. COUTURE),

87/867,012 (A.S.A.H.D. A SON AND HIS DAD (and design)), 87/529,960 (ASAHD), and

87/529,865 (ASAHD COUTURE).

5.    Directing that Defendants file with the Court and serve upon Plaintiffs' counsel

within thirty (30) days after entry of judgment a report in writing under oath, setting forth in

detail the manner and form in which they have complied with the above.

6.    Awarding Plaintiffs such damages he has sustained or will sustain by reason of

Defendants' violations of N.Y. Civ. Rights L. § 50, including but not limited to all gains, profits,

property and advantages derived by Defendants from his unlawful conduct.

7.    Awarding to Plaintiffs exemplary damages pursuant to N.Y. Civ. Rights L. §§ 50-

51.

8.    Awarding Plaintiffs interest, including pre-judgment interest on the foregoing

sums.

9.    Awarding Plaintiffs such damages they have sustained or will sustain by reason of

Defendants' acts of trademark infringement, and unfair competition and that such sums be

trebled pursuant to 15 U.S.C. § 1117.

10.    Awarding Plaintiffs all gains, profits, property and advantages derived by

Defendants from their unlawful conduct.

11.    Awarding to Plaintiffs exemplary and punitive damages to deter any further

violations of their rights as the Court finds appropriate.

12.    Awarding to Plaintiffs their costs and disbursements incurred in this action,

including reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

13.    Awarding Plaintiffs interest, including pre-judgment interest on the foregoing

sums.

14.     Declaring that Plaintiff ATK, in the promotion and sale of clothing under the

ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks, has not

infringed any rights, including any trademark-related rights, of Defendants and that Plaintiff

ATK has the lawful right to use the ASAHD, ASAHD KHALED, and ASAHD TUCK

KHALED names and marks on or in connection with its products, and to advertise and promote

the same, including in collaboration with Nike Inc.'s JORDAN brand;

15.     Declaring that Plaintiff ATK's use of the ASAHD, ASAHD KHALED, and

ASAHD TUCK KHALED names and marks for clothing does not constitute trademark

infringement or unfair competition in violation of the Lanham Act or under applicable state law

or common law, or otherwise constitute unfair business practices under applicable state or

common law;

16.     Permanently enjoining Defendants from asserting claims or filing actions against

Plaintiff ATK or any business partner of Plaintiff ATK, including, without limitation, Haddad

Brands and Nike Inc., arising out of Plaintiff ATK's use of the ASAHD, ASAHD KHALED, and

ASAHD TUCK KHALED names and marks in connection with clothing products, objecting to

Plaintiff ATK's pending and future applications to register ASAHD, ASAHD KHALED, and

ASAHD TUCK KHALED as trademarks, or interfering with any registrations that issue

therefrom, or making any threats against Plaintiff ATK for infringement, or interfering in any

way with Plaintiff ATK's use or registration of the ASAHD, ASAHD KHALED, and ASAHD

TUCK KHALED names and marks in connection with clothing products;

17.     Awarding Plaintiff ATK any and all damages sustained by it as a result of

Defendants' threats of legal action, commercial defamation, and any other interference by

Defendants with Plaintiff ATK's business activities;

18.      Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June 8, 2018

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____

    Craig S. Mende
    David A. Donahue
    Sean F. Harb
4 Times Square, 17th Floor
New York, New York 10036
(212) 813-5900
*cmende@fzlz.com*
*ddonahue@fzlz.com*
*sharb@fzlz.com*

*Attorneys for Plaintiffs*