Matthew W. Siegal
Dilworth & Barrese LLP
Attorneys for Defendant Business Moves
1000 Woodbury Road
Woodbury, New York 11797
Tel.:  (516) 228-8484
Fax:  (516) 228-8516
*msiegal@dilworthbarrese.com*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
KHALED M. KHALED and
  ATK ENTERTAINMENT, INC.,

                Plaintiffs,

      v.                              Case No. 18-cv-05187 (PAE) (DCF)

CURTIS BORDENAVE and
BUSINESS MOVES CONSULTING INC.
D/B/A BUSINESS MOVES,

                Defendants.
--------------------------------------------------------X

**DEFENDANT BUSINESS MOVES' MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE AN AMENDED COMPLAINT**

Defendant Business Moves opposes the motion of Plaintiffs Khaled M. Khaled (Khaled) and ATK Entertainment, Inc. (ATK) for leave to file an amended complaint, because every newly alleged fact allegedly supporting the newly characterized claims for relief was available to Plaintiffs when the original complaint was filed in June, 2018. Plaintiffs were aware that: (1) Asahd Tuck Khaled (Asahd) was a Florida resident and that ATK was a Florida Corporation; (2) Business Moves was using We The Best in hashtags; and (3) Business Moves' trademark application for ASAHD COUTURE would register before this case was ready for trial. Thus, Plaintiffs have not shown good cause to violate the previously extended deadline for amending the pleadings herein.

## I.      Preliminary Statement

Plaintiffs' motion to amend the complaint should be denied, because the motion does not demonstrate sufficient good cause to do so. The change to the right of privacy claims does not allege **any** newly discovered facts. Plaintiffs have always known that Asahd is a Florida resident and that ATK is a Florida corporation. The claim under the Florida statute could have been brought before the deadline expired. Similarly, the recharacterization of the allegations regarding the use of We The Best in hashtags could have been brought before the deadline expired. In fact, the original complaint literally alleges the use of We The Best in hashtags. Moreover, the Amended Complaint characterizes the newly alleged conduct as a "continu[ation]" of the conduct alleged in the original complaint - **an admission that hashtag usage was not newly discovered**. (Ex. B, ¶ 45). Finally, action by Plaintiffs against the newly issued trademark registration could have and should have been initiated in the Patent and Trademark Office before the deadline expired; and the need for action could have been described in the Complaint before the deadline expired.

Finally, the proposed amendments should be precluded to prevent a prejudicial chilling effect on full, frank and productive discussions during settlement conferences. Permitting Plaintiffs to use information and arguments learned or "focus group" tested during a settlement conference as a way to reassess the characterization of their arguments and correct legal errors would discourage productive communication during a settlement conference.

For the reasons discussed herein, the motion should be denied.

## II.      Background Facts
### A.      The Extended Deadline For Amending The Complaint Has Passed

The Civil Case Management Plan and Scheduling Order entered September 26, 2018 set an October 26, 2018 deadline for any motion to amend the pleadings. (Doc. 22). In response to a joint motion of the parties, the Court extended this deadline to November 19, 2018. (Doc. 26). At 5:31 PM on December 21, the Friday before the Christmas holiday week, Plaintiffs sent counsel for Business Moves a proposed Amended Complaint for review. That proposed Amended Complaint is understood to be the same as that attached to Plaintiffs' memorandum of law. (cited herein as Ex. A, ¶ __ (clean) or B, ¶ __ (marked)).

The proposed amended complaint (Ex. B) contains extensive changes to the original complaint. The first two claims for relief were originally brought under New York law. These claims represent the only connection this action has to the State of New York. Ex. B changes the entire legal basis of these claims from NY law to Florida law: Fla. Stat. Ann. § 540.08. These changes were prompted by Business Moves' legal arguments, raised at the time of the court ordered settlement conference. However, **Ex. B alleges no new relevant facts** about these claims.

The only proposed changes to the allegations supporting the first two claims for relief are legal. Ex. B, ¶¶ 63-72. None of the proposed changes in Ex. B relate to Asahd's or ATK's residence in Florida. Moreover, the proposed Amended Complaint no longer has any connection to New York. Ex. B, ¶ 64. However, despite changing the entire legal basis of the first two claims from New York law to Florida law, all the factual bases for the first two claims remain the same and/or could have been made earlier. **No newly discovered <u>factual</u> allegations were presented**.

The third through fifth claims for relief accuse Business Moves of infringing Khaled's alleged We The Best trademark. Ex. B greatly expands the relevance of hashtag use as a basis for trademark infringement. However, Plaintiffs do not explain why Defendants' hashtag use is a trademark use, such that the amendment would not be futile. Moreover, Plaintiffs never explain why the new allegations could not have been made when the original complaint was filed. Original Complaint ¶ 45 (Doc 1) alleges that Business Moves infringed Khaled's trademarks by using We The Best Lifestyle and other trademarks associated with Khaled as hashtags:

2

> In an attempt to confuse consumers into believing that there is a connection between Plaintiffs and Defendants'…products and services, Defendants have used the WE THE BEST LIFESTYLE … trademark[], … and various other trademarks and terms associated with Plaintiffs, **as Instagram account names and as links and** *hashtags* in Defendants' Instagram posts. For example, … *#wethebestlifestyle*." (emphasis added). Complaint, ¶ 45 (Doc 1)

In Ex. B, ¶ 45, Plaintiffs now define a collection of We The Best "Formatives" as variations of the We The Best trademark and that Defendants use such variations, such as #wethebestlifestyle, as hashtags to cause confusion with Plaintiffs[1]. Notably, Ex. B first recites allegations regarding hashtag usage **from the original complaint**. *Id.* It then newly alleges that "Defendants have **continued"** the conduct alleged in the original complaint. (emphasis added). Thus, Plaintiffs base the "new" allegations on the fact that Defendants have continued the same conduct "even after Plaintiffs filed the Complaint in this action." *Id.* Accordingly, because Plaintiffs admit that the use of We The Best in hashtags is merely a continuation of conduct they knew about before the original complaint was filed, the new inclusion of hashtag use into all of their trademark infringement allegations could have been made in the original complaint. Plaintiffs did not show diligence.

It is clear that the only "new" information Plaintiffs "learned" is that the conduct supporting allegations in the original complaint has continued. Plaintiffs admittedly knew about Business Moves' Instagram posts and use of variations of We The Best in hashtags when the original complaint was filed. Therefore, Plaintiffs have not identified any new material information or facts to support the amendments they propose herein. Their argument that continued use is a new fact would support amending the complaint in almost any action. Rather, Plaintiffs realized that the arguments made by Business Moves' during the settlement conference were persuasive and seek to amend the complaint for tactical reasons, not because they learned new facts.

Plaintiffs' eighth claim for relief seeks cancellation of Business Moves' Trademark Registration No. 5,623,582. When the original complaint was brought, this registration was still in

---

[1] Defendants deny that the use of, e.g., #wethebestlifestyle causes confusion with Khaled. Plaintiffs have not tried to dispute that anyone viewing the Instagram posts would immediately recognize that the posts have no connection to Khaled. Furthermore, a user can exit those posts with one mouse click.

the application stage as Ser. No. 87529865. However, trademark application status is public. Plaintiffs were aware of Business Moves' other trademark applications and had filed Oppositions against some of them. The notice of allowance of this application issued February 6, 2018. In June 2018, when the original complaint was filed, diligence would have shown and Plaintiffs were likely aware of the notice of allowance from the publicly accessible Trademark Office website. Plaintiffs should have been aware that the allowed application would issue as a registered trademark. They could have attacked the application in a Trademark Office proceeding as they did with other Business Moves trademark applications. The original complaint could have alleged the newly presented grounds supporting invalidity.

## III.   ARGUMENT

### A.   Plaintiffs Must Show That They Could Not Have Made The New Allegations Before The Deadline Expired - But Have Not And Cannot

Plaintiffs concede that the lenient standard for amending a complaint under Rule 15(a) is subject to "the requirement under Rule 16(b) that a Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Holmes v. Grubman*, 568 F.3d 329. 334-35 (Fed. Cir. 2009). "The purpose of Rule 16(b) is 'to offer a measure of certainty in pretrial proceedings, ensuring that at some point the parties and the pleadings will be fixed.' *Parker v. Columbia Pictures Indus*., 204 F.3d. 326, 339-40 (2d Cir. 2000)." *Sokol Holdings, v. BMD Muni, Inc*., No. 05 Civ. 3749, 2009 WL 2524611, at *7 (August 14, 2009)(Mag. J. Freeman). To establish "good cause" in these circumstances, the moving party must show that even if it had exercised "diligence," it could not have met the deadline. Plaintiffs have not even discussed their diligence. *Id.*

It is clear that all of Plaintiffs proposed amendments to the complaint (other than the identification of the trademark registration number) could have been made well before expiration of the once extended deadline. "Examples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline. *Sokol Holdings,* 2009 WL 2524611, at *8; see also, *Perfect*

*Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 458 (S.D.N.Y. 2012)(J. Engelmayer)("Perfect has not shown good cause for failing to timely add allegations relating to the False Comparative Advertising Statement…. [I]t would have taken Perfect little investigation and probably no more than 15 minutes' time to determine that Majestic's publicly-accessible website continued to falsely claim registered trademark status.").

Accordingly, it is clear that the first, dispositive step in determining whether Plaintiffs are entitled to overcome the November 19, 2018 deadline, is to determine whether Plaintiffs can show good cause for failing to meet that deadline. "Only if they are able to do so, would the Court need to consider whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on … Rule 15(a)…." *Sokol Holdings* at *8.

As indicated herein, it is clear that Plaintiffs have not and cannot show good cause. At the time they brought the original complaint: (1) Plaintiffs knew Asahd Tuck Khaled was a Florida resident and ATK was a Florida corporation; (2) Plaintiffs had already alleged that Defendants were using the #wethebest hashtag; and (3) Defendants' ASAHD COUTURE application had been allowed by the Office. Therefore, as in *Sokol Holdings*, Defendants could have asserted all the new allegations in Ex. B (other than identifying the registration number) before the deadline expired. Thus, Plaintiffs have not shown good cause to amend the complaint.

**B. Not Only Did Plaintiffs Know That Defendants Were Using "wethebest" in Hashtags, But The Amendment To The Complaint Is Futile Because Plaintiffs Have Not Shown That Such Hashtag Use Is Trademark Infringement**

As explained in *Sokol* at *8, the first step in assessing the good cause issue is to determine whether Plaintiffs demonstrated diligence. However, even if the Court finds that Plaintiffs could not have learned that Business Moves' use of We The Best in hashtags was trademark infringement before the deadline expired, the proposed amendments fail because they are "futile." See *AEP Energy Serv. Gas Holding Co. v. Bank of Am.*, 626 F.3d 699, 726 (2d Cir. 2010)(An amendment is futile if movant cannot demonstrate a legally or factually triable issue).

The original complaint asserts liability in connection with the use of We The Best in hashtags in only the fourth claim for relief, which is for Federal Unfair Competition. Plaintiffs

first and second claims for relief relate to the use of the word Asahd. Plaintiffs' third claim for relief (Doc. 1, ¶¶ 73-78) is for Federal trademark infringement and does not allege hashtag usage:

> Defendants' offering, advertising and providing of products and services under the WE THE BEST LIFESTYLE mark is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' products and services.

Doc. 1, ¶ 75, see also ¶¶ 73-78 which do not mention hashtags. Plaintiffs' fifth claim is for New York common law unfair competition. Doc. 1, ¶¶ 87-92. Plaintiffs do not mention the use of hashtags therein. Likewise, there is no mention of the use of We The Best in hashtags in the descriptions of the sixth (¶¶ 93-99), seventh (¶¶ 100-104) or eighth (¶¶105-108) claims for relief.

The proposed amended complaint seeks to introduce hashtag usage into the third, fifth and sixth claims for relief. Amended complaint ¶ 45 newly alleges that "Defendants have used WE THE BEST and various "formatives" thereof, including without limitation, WE THE BEST BRANDS and WE THE BEST LIFESTYLE (collectively, with WE THE BEST, 'WE THE BEST Formatives')". As examples of what Plaintiffs mean by Defendants' alleged wrongful use of the WE THE BEST Formatives, Plaintiffs identify hashtag uses, such as "WETHEBEST and WETHEBESTLIFESTYLE" on Instagram posts. The proposed amended complaint then substitutes "WE THE BEST Formatives" where it had originally merely recited, "WE THE BEST." Therefore, by proposing to amend the complaint in this manner, Plaintiffs are seeking to add an allegation of hashtag usage into every one of their allegations of trademark infringement.

Thus, the proposed amendments now allege that consumers are likely to believe the goods depicted in Defendants' Instagram posts originate with Plaintiff Khaled. However, Plaintiffs' motion does not describe the context of the original or subsequent hashtag uses or why they are trademark infringements. In fact, Plaintiffs' motion does not depict a single post.

The accused Instagram posts are a composite of images and multiple hashtags. Examination of the actual posts makes it clear that they contain no trademark usage of We The Best and no consumer would be confused into believing that the posts originate with Khaled.

Plaintiffs have not attempted to explain why the hashtag usage is trademark infringement and why the amendment is not futile. For example, Siegal Declaration Ex. 1 is a Business Moves Instagram post from June 2018 depicting Defendants' Dagauge haircare products. The image depicts various products, and the Dagauge Brands logo. The text of the post most prominently displays "businessmovesbrands Follow @dagauge and DaGauge.com." Siegal Dec. Ex. 1.

Hashtags are not source identifiers, product names or trademarks. They are a means to draw attention to an internet website from someone searching for a particular hashtag. Thus, this Instagram post includes the following hashtags:

> #businessmoves #businessmovesbrands #wethebest #instagood
> #instafresh #instagramhub #instagram #instafood #haircare
> #cuttingwithconfidence #anybodycangetit #barbers #barbershop
> #beautycare

Siegal Ex.1. Therefore, it can be seen that Defendants' Instagram post does not use We The Best as a trademark. Rather, as with #haircare, #barbers and #barbershop, #wethebest is used to draw attention to the Dagauge Brand products displayed in the post. #wethebest does not designate origin.

Plaintiffs attempt to incorporate Defendants' hashtag usage into trademark infringement claims 3, 5 and 6 fails for two reasons. First, Plaintiffs' motion does not even attempt to explain their lack of diligence, i.e., why the new hashtag uses are not cumulative to the hashtag uses existing by June 2018 and alleged in the original complaint. Second, Plaintiffs have not shown that the hashtag uses are trademark infringements. Accordingly, Plaintiffs have not shown that the new claims are not futile, given that the nature of the Instagram posts makes it **unlikely** that any consumers would be confused that the posts originate with Khaled.

Trademark infringement only exists where a defendant's use of a plaintiff's trademark "is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Savin Corp. v. The Savin Group*, 391 F.3d. 439, 456 (2d Cir. 2004). Plaintiffs have not even attempted to explain why typical consumers viewing Defendants' Instagram posts would be confused into thinking that they originate with Plaintiffs. In certain circumstances, some courts

have based non-traditional trademark infringement on the concept of "initial interest confusion." See, *Bigstar Entertainment v. Big Star, Inc.*, 105 F.Supp.2d 185, 208-09 (S.D.N.Y. 2000). However, Plaintiffs' motion and amended complaint do not allege initial interest confusion nor have Plaintiffs provided any other explanation why the hashtag uses should be considered trademark infringement.

Initial interest confusion is discussed in *Savin, supra.* Defendant in *Savin* registered the internet domain names www.thesavingroup.com and www.savinengineers.com. Plaintiff argued, *inter alia*, that this use of plaintiff's trademark would cause "initial interest confusion." However, the Court noted that due to the nature of the Internet, consumers that were inadvertently diverted to the defendant's website can "readily get back on track … thus minimizing the harm to the owner … from consumers becoming trapped in a competing site…." 391 F.3d. at 462, n. 13. Therefore, in order to prove initial interest confusion in connection with Internet related activities, plaintiffs need to show "intentional deception." *Id*.

Hashtags are typically used to draw attention to a post, not to identify source or sponsorship. Even if Plaintiffs can demonstrate that Defendants used Khaled's alleged trademark in their Instagram posts, Plaintiffs have not even attempted to show that Business Moves intended to deceive consumers to believe that the offered goods originated from Plaintiffs. Plaintiffs have not even tried to show that the goods depicted in the Instagram posts compete with any of Khaled's goods. Plaintiffs cannot show that Defendants' posts caused Khaled to lose any sales of any products. Rather, the Instagram posts clearly create no confusion with any of Khaled's goods or services and Plaintiffs' motion does not demonstrate otherwise. Therefore, Plaintiffs' motion fails, *inter alia*, because it ignored the important "futility" issue.

C.    **Plaintiffs Could Have Addressed the Trademark Registration Issue Before the Deadline Expired**

Plaintiffs new cause of action to cancel the new registration also could have been addressed before the deadline expired. Khaled has filed trademark oppositions in the Trademark Office against other of Defendants' trademark applications. The notice of allowance of this application issued in February 2018. Thus, if they were diligent, Plaintiffs could have and should

8

have addressed this issue in the Trademark Office before the complaint was filed. Furthermore, they could have and should have known that the registration would be forthcoming when they brought the complaint. Accordingly, reasonable diligence should have precluded any surprise. Consequently, they have not demonstrated good cause for the amendment proposed herein.

### D.    Amending The Complaint Would Permit Prejudice To Occur

Although, as demonstrated above, the court should not assess the issue of prejudice until after it determines that Plaintiffs were diligent, the motion should also be denied to dissuade prejudicial behavior. It is clear that the amendments changing the privacy statute from New York to Florida and the change in the nature of the allegations regarding We The Best all resulted from information Plaintiffs' counsel learned at the settlement conference. Therefore, permitting Plaintiffs to amend the complaint at this stage in the litigation would have a chilling effect on efforts to settle litigation.

Plaintiffs admit that they decided to drop the privacy cause of action under the New York Statute in favor of the Florida statute as a result of information learned in connection with the settlement conference. Therefore, permitting the amendment would encourage parties to withhold similar information during settlement conferences, permit the inefficient administration of justice to occur and then bring a last minute summary judgment motion after the parties' and the courts efforts had been wasted.

Plaintiffs' amended characterization of the We The Best allegations also results directly from information learned during the settlement conference. A settlement conference should comprise a productive effort to settle the matter. A party should not be able to use a settlement conference as focus group sounding board to assess how well legal issues will be received. Permitting the amendments proposed by plaintiff will discourage a party from presenting its best arguments during settlement conferences, on the fear that opposing counsel will recast its allegations in light of those arguments. Therefore, permitting the amendments to the complaint proposed herein will encourage parties to keep their best arguments under wraps and forego an

effective settlement conference, lest those best arguments be used by opposing counsel to recharacterize the case.

**IV.    Conclusion**

Based on the foregoing, it is clear that plaintiffs did not demonstrate good cause to amend the complaint, could have made the amendments sought herein within the deadline, are making futile arguments and are prejudicing the process. Accordingly, this motion should be denied.

Dated:  New York, New York               DILWORTH & BARRESE, LLP
        January 23, 2019

                                         By:   *Matthew W. Siegal*/s
                                               Matthew W. Siegal
                                               Dilworth & Barrese LLP
                                               Attorneys for Defendant
                                                 Business Moves
                                               1000 Woodbury Road
                                               Woodbury, New York 11797
                                               Tel.:  (516) 228-8484
                                               Fax:  (516) 228-8516
                                               *msiegal@dilworthbarrese.com*

                                               Philip J. Campisi, Esq.
                                               Westerman Ball Ederer Miller
                                               Zucker & Sharfstein, LLP
                                               1201 RXR Plaza
                                               Uniondale, New York 11556
                                               (516) 622-9200
                                               *pcampisi@westermanllp.com*
                                               *Attorneys for Defendants Curtis Bordenave*
                                               *Business Moves Consulting Inc. d/b/a*
                                               *Business Moves*

## CERTIFICATE OF SERVICE

I hereby certify that the attached Defendant Business Moves' Memorandum Of Law In Opposition To Plaintiffs' Motion To File An Amended Complaint is being transmitted and served electronically on Curtis Bordenave and by ecf to Craig S. Mende, David A. Donahue and Sean F. Harb, counsel for plaintiff, Khaled M. Khaled and ATK Entertainment, Inc., on January 23, 2019.

*Matthew W. Siegal*/s
Matthew W. Siegal
