UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KHALED M. KHALED and ATK ENTERTAINMENT, INC.,

                     Plaintiffs,

-v-

CURTIS BORDENAVE and BUSINESS MOVES CONSULTING INC. d/b/a BUSINESS MOVES,

                     Defendants.

18 Civ. 5187 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiffs Khaled M. Khaled, a hip-hop music mogul, and ATK Entertainment, Inc. ("ATK"), have moved for leave to file an amended complaint. Dkt. 33. The existing Complaint brings eight claims against defendants Curtis Bordenave and Business Moves Consulting, Inc., ("Business Moves"). These are: two counts of invasion of right of privacy in violation of New York Civil Rights Law §§ 50-51; trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1),1125(a); unfair competition under New York common law; violation of the New York Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349; commercial defamation; and a claim for declaratory judgment of non-infringement.

    The proposed amended Complaint ("PAC") seeks to add a claim for cancellation of trademark registration pursuant to 15 U.S.C. § 1052(a), based on Business Moves' registration of ASAHD COUTURE (U.S. Trademark Registration No. 5,623,582); to expand its trademark infringement claims by adding allegations regarding defendants' purported use of additional variations of the WE THE BEST mark; and to shift the statutory basis for plaintiffs' claim of breach of the right of privacy from New York to Florida law. Defendants oppose this motion on the grounds that: (1) certain newly alleged facts that plaintiffs claim support granting their

1

motion to amend were known or available to plaintiffs at the time they filed the initial Complaint, (2) amending the Complaint would unfairly prejudice defendants, and (3) plaintiffs' new claims regarding the WE THE BEST mark fail to state a claim of trademark infringement and hence are futile.

For the following reasons, the Court grants plaintiffs' motion in part and denies it in part.

## I. Background

### A. Facts[1]

#### 1. The Parties

Khaled is known professionally as "DJ Khaled." Among other things, he is known for the use of the phrase "WE THE BEST" in many of his songs. Asahd Tuck Khaled is his 18-month-old son. Dkt. 10 ("Compl.") ¶¶ 1–2. ATK Entertainment, Inc., is a Florida corporation named after Asahd. It has a principal place of business in Miami-Dade County. *Id.* ¶ 8.

Bordenave is the founder and principal of Business Moves, a corporation incorporated in Mississippi with a place of business in Dallas, Texas. *Id.* ¶¶ 9–10. Business Moves is an apparel company that sells t-shirts with various logos and slogans via Instagram and its website. *Id.* ¶¶ 39, 44.

#### 2. Allegations

Plaintiffs allege that defendants intentionally appropriated the names and trademarks of Khaled and his son Asahd to direct internet traffic to defendant's products. *Id.* ¶¶ 1–3. Plaintiffs own registered trademarks in DJ KHALED (U.S. Trademark Registration No. 5,085,344), *Id.* ¶ 17, and WE THE BEST (Nos. 4,198,000; 5,031,701; 5,032,062; 5,341,520) for a variety of

---

[1] The account of the case's underlying facts and procedural history is drawn from the parties' pleadings, as well as their submissions in support of and in opposition to the instant motion.

goods and services. *Id.* ¶ 30. Plaintiffs claim that defendants intentionally used, and applied to register trademarks for, ASAHD, ASAHD COUTURE, A.S.A.H.D. A SON AND HIS DAD, and WE THE BEST LIFESTYLE. *Id.* ¶ 3. Plaintiffs allege that defendants have used these trademarks in connection with their clothing and magazine publishing business. *Id.*

In July 2017, roughly nine months after Asahd's birth, defendants filed U.S. Application Serial Number 87/529,960 for ASAHD and U.S. Application Serial Number 87/529,865 for ASAHD COUTURE (for fragrance, skincare, and haircare products). *Id.* ¶ 40. Ten days later, defendants filed Application Serial Number 87/541,379 for WE THE BEST LIFESTYLE. *Id.* ¶ 42. Soon thereafter, defendants filed two additional trademark applications, No. 87/529,960 for ASAHD COUTURE (in connection with footwear and other clothing items) and No. 87/867,012 for A.S.A.H.D. A SON AND HIS DAD. *Id.* ¶ 43. Defendants do not dispute these facts.

Plaintiffs allege, *inter alia*, that defendants have used the WE THE BEST mark and Asahd's name for commercial purposes without Khaled's or ATK's consent. Compl. ¶ 47. They claim that defendants' use of the mark is intentionally fraudulent and seeks to deceive consumers into associating defendants' merchandise and services with DJ Khaled and Asahd. *Id.* ¶ 45. Plaintiffs further allege that defendants have defamed ATK and harmed its business reputation by falsely claiming ownership of the ASAHD brand. *Id.* ¶¶ 54–57.

Plaintiffs allege that the infringing use of variations of their marks is part of a pattern of infringing conduct by defendants. In addition to the trademark registrations at issue in the instant case, defendants have applied to register trademarks for, *inter alia*, CARDI B (named after another well-known hip-hop figure), STORMI COUTURE (named after Stormi Webster, the daughter of model Kylie Jenner and hip-hop artist Travis Scott), CYNTHIA BAILEY EYEWEAR (named after a model and television personality), and Sirius (named after the

3

popular satellite radio station). *Id.* ¶ 39. Plaintiffs claim that, like Khaled and ATK, none of these individuals or their representatives have authorized defendants to use or register these trademarks. *Id.*

### B. Procedural History

On June 8, 2018, plaintiffs filed their Complaint bringing the above claims against Bordenave and Business Moves. Dkt. 10. On September 26, 2018, the Court entered a scheduling order that set October 26, 2018 as the deadline to amend pleadings. Dkt. 22. The Court ordered that fact discovery be completed by January 23, 2019, Dkt. 22, although this deadline was later extended, at the parties' request, to April 26, 2019. Dkt. 32.

On January 9, 2019, plaintiffs filed a motion to amend their Complaint, Dkt. 33, based on information discovered in preparation for a December 11, 2018 settlement conference before Magistrate Judge Debra Freeman; a supporting memorandum of law, Dkt. 34 ("Pl. Mem."); a proposed amended Complaint, Dkt. 34-1; and a supporting declaration of David A. Donahue, Esq., Dkt. 35 ("Donahue Decl."). Plaintiffs claim to have discovered allegedly infringing uses of the WE THE BEST mark by defendants that occurred between November 2018 and January 2019, after the deadline to amend had passed. Pl. Mem. at 3–4. Plaintiffs also claim that, in a discussion immediately preceding the settlement conference, defendants' counsel questioned whether plaintiffs' right of privacy claims could viably proceed under New York law. *Id.* at 4. The parties agree that plaintiffs' desire to amend the Complaint resulted from information gained in connection with the settlement conference. Dkt. 39 ("Def. Mem.") at 9.

On January 23, 2019, defendants filed a memorandum of law in opposition to the motion to amend. Dkt. 39. On January 30, 2019, plaintiffs filed a reply. Dkt. 41.

## II. Applicable Legal Standards

Plaintiffs' motion to amend is subject to two Federal Rules of Civil Procedure: 15(a) and 16(b).

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend" under Rule 15. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A court may properly deny leave to amend under Rule 15(a) upon a showing of prejudice or bad faith; "[a]mendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *AEP Energy Servs. Gas Holding Corp. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("The court plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.").

Because the present motion to amend was filed after the deadline set in the court-ordered case management plan, *i.e.*, October 26, 2018, it is also subject to Rule 16(b). *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 243–45 (2d Cir. 2007) ("Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed."); *Fresh Del Monte Produce, Inc. v. Del Monte Foods,*

5

*Inc.*, 304 F.R.D. 170, 174–76 (S.D.N.Y. 2014) (discussing interplay between Rules 15 and 16 in motions to amend). Rule 16(b) requires that the Court set a schedule, which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Relevant here, Rule 16(b)(4) provides that such a schedule "may be modified only for good cause." *Id.* 16(b)(4). Where Rule 16(b) applies, it informs the Court's exercise of discretion under Rule 15(a): Although Rule 15(a) provides that leave to amend is to be freely given "when justice so requires," "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause [pursuant to Rule 16]." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see also Ramsay-Nobles v. Keyser*, No. 16 Civ. 5778 (CM), 2018 WL 6985228, at *7 (S.D.N.Y. Dec. 18, 2018) ("[T]he 'good cause' standard is permitted but not mandated when a party seeks to amend its pleadings after the deadline set in the scheduling order." (citation omitted)).

As the Second Circuit has explained, the scheduling order for which Rule 16 provides serves an important purpose: "By limiting the time for amendments, [Rule 16] is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker*, 204 F.3d at 340 (quotation marks and citation omitted). Therefore, "a finding of 'good cause' depends on the diligence of the moving party" in complying with the deadline for amendments. *Id.* (citation omitted). In addition, a court applying Rule 16 has discretion to examine the Rule 15(a) factors, "in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants," *Kassner*, 496 F.3d at 244, as well as "futility, bad faith, [and] undue delay," *McCarthy*, 482 F.3d at 200 (citation omitted).

6

Practical considerations pertinent to the above multi-factor analysis include the duration of the case and the stage of discovery. In *McCarthy*, for example, the Second Circuit affirmed the denial of leave to amend under Rule 15 where the motion came "more than two months after discovery was completed and more than a year and a half after the filing of the original complaint." 482 F.3d at 201 (citation omitted). The district court had noted that "if the amendment is allowed, merits discovery will need to be reopened and the litigation will, in essence, start over—the same experts will likely need to produce new reports and be re-deposed." *Id.* (quotation marks, alteration, and citation omitted). Similarly, in *Ramsay-Nobles*, Chief Judge McMahon noted when applying Rules 15 and 16 that the proposed counterclaims had come less than a month before fact discovery's close and "would have required the reopening of a case for which extensive discovery has been conducted and one that has been proceeding for far too long." 2018 WL 6985228, at *9 (quotation marks and citations omitted). Other decisions have denied motions to amend on similar grounds. *See, e.g., Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (upholding denial of motion to amend under Rules 15 and 16 where "plaintiffs delayed more than one year before seeking to amend their complaint [and] discovery had been completed"); *Abdullah James George Wilson v. Corelogic Saferent, LCC*, No. 14 Civ. 2477 (JPO), 2016 WL 482985, at *1–3 (S.D.N.Y. Feb. 8, 2016) (denying under Rules 15 and 16 motion for leave to amend filed six months after deadline for amendment where motion sought to add to class claim).

### III. Discussion

#### A. Claim for Trademark Cancellation

Plaintiffs first seek to add a claim for cancellation of registration of trademark. Plaintiffs explain that, while preparing for the settlement conference, they learned that, in response to

7

defendants' application, the USPTO had issued Registration No. 5,623,582 to defendants for ASAHD COUTURE. Pl. Mem. at 3. At the time the initial Complaint was filed, the trademark application, although filed, had not yet been approved. Accordingly, the initial Complaint alleged only that defendants had applied to register the trademark. Plaintiffs argue that they have been diligent and could not have brought a claim for trademark cancellation until the offending trademark had been registered. After learning on December 4, 2018, of the trademark's registration, plaintiffs promptly at the December 11 conference notified defendants of their intent to seek to amend the Complaint. Donahue Decl. ¶ 2. On December 21, 2018, plaintiffs then sent the PAC to defendants and, on January 9, 2019, filed this motion. *Id.* ¶ 5.

Opposing amendment, defendants argue that because plaintiffs knew that the trademark application for ASAHD COUTURE had been received by the USPTO at the time the Complaint was filed, "the need for action [against the registration] could have been described in the Complaint before the deadline expired." Def. Mem. at 1. Defendants further contend that plaintiffs should have filed with the USPTO an opposition to the trademark application before the Complaint was filed, and that failure to do so demonstrates a lack of diligence. *Id.* at 8–9.

In deciding whether to allow an amended complaint after the scheduling order deadline, the Court's "primary consideration is whether the moving party can demonstrate diligence." *Kassner*, 496 F.3d at 244. The Court may also consider other factors, such as "whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.* Here, a central question is whether plaintiffs were diligent in the four weeks between the USPTO's registration of defendants' trademark and the filing of this motion. The Court concludes that plaintiffs were diligent and have demonstrated good cause under Rule 16 to add now a new claim for cancellation of defendant's trademark for ASAHD COUTURE.

Defendants argue that, because plaintiffs knew of the pending trademark application, they could have anticipatorily acted against its eventual registration in the initial Complaint. That is unpersuasive. Absent bringing a conditional claim directed to a hypothetical future issuance by the USPTO of a registration to defendants for ASAHD COUTURE, it is unclear how plaintiffs could have brought claims then, given that the trademark had yet to issue. Plaintiffs are not required to anticipate future changed circumstances in formulating a complaint. Fed. R. Civ. P. 8(d)(2) ("A party *may* set out 2 or more statements of a claim or defense alternatively or hypothetically." (emphasis added)). Instead, the Federal Rules of Civil Procedure provide a mechanism by which parties can update their claims to address new developments—Rule 15.

Defendants' argument that plaintiffs should have sought relief in the USPTO is also unavailing. While plaintiffs had the ability to file an opposition to the Notice of Allowance issued by the USPTO in February 2018, defendants do not cite authority that the failure to pursue this administrative path precludes amendment or establishes a lack of diligence. Quite the contrary, the Lanham Act empowers courts to issue cancellations only of *registered* trademarks, not pending applications. 15 U.S.C § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."). And an earlier amendment would have been premature: Courts in other districts have rejected the argument that a district court can interfere with or direct the rejection of a pending trademark application. *See GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) ("[B]y its terms, § 37 contemplates an action involving a registered trademark."); *see also Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 266 (N.D. Ohio 2007); *Whitney Info. Network, Inc. v.*

*Gagnon*, 353 F. Supp. 2d 1208, 1211 (M.D. Fla. 2005) ("The Court concludes that in order to state a claim under these statutory provisions, one of the parties must hold a registered trademark with the USPTO; the existence of a pending application is not sufficient."). Accordingly, plaintiffs could not have sought relief in court against defendants' USPTO application until it was granted. The Court therefore rejects defendants' claim of a lack of diligence on plaintiffs' part.

As to the element of prejudice, defendants contend that permitting an amendment would unduly prejudice them, but their arguments relate generally to plaintiffs' proposed amendments, not specifically to the amendment to add a cancellation of trademark claim specifically. Def. Mem. at 9–10. The Court does not find any prejudice to defendants from the addition of that particular claim, which should not materially affect the scope of discovery or trial preparation. Nor is it likely that the addition of the cancellation claim will delay resolution of the dispute. The Court therefore grants plaintiffs' motion to amend to add a claim for cancellation of defendant's trademark in ASAHD COUTURE.

### B.    Additional Claims for New Uses of WE THE BEST

Plaintiffs also propose to add allegations concerning recently discovered uses by defendants of the mark WE THE BEST, in violation of plaintiffs' registered trademark in WE THE BEST. Plaintiffs represent that they "recently learned that Defendants have . . . repeatedly used additional WE THE BEST formatives, such as #WETHEBEST and #WETHEBESTBRANDS, as hashtags to advertise products in social media—notably including a barrage of posts containing such hashtags . . . after the deadline to amend had passed." Pl. Mem. at 4. Plaintiffs thus seek to expand their infringement claims to include such uses in social media posts between November 2018 and January 2019. The initial Complaint, in contrast,

sought relief for defendants' improper use solely of WE THE BEST LIFESTYLE. Compl. at ¶¶ 47–49, 58–59.

The PAC thus would add claims as to the defendants' use of WE THE BEST BRANDS and broaden the initial Complaint's references to WE THE BEST LIFESTYLE to cover "WE THE BEST formatives" or variants thereof. For example, paragraph 47 of the initial Complaint alleges: "Defendants have not obtained written consent from Plaintiffs or any representative of the Plaintiffs to use the ASAHD name and mark and WE THE BEST LIFESTYLE mark." *Id.* at ¶ 47. The amended paragraph reads: "Defendants have not obtained written consent from Plaintiffs or any representative of the Plaintiffs to use the ASAHD name and mark and WE THE BEST formatives." PAC at ¶ 47. Plaintiffs argue that this expansion will not disrupt the course of the litigation, or add materially to discovery, because "the Complaint already demands that Defendants be enjoined from using the WE THE BEST MARK *or any colorable imitation thereof*, including, *without limitation*, WE THE BEST LIFESTYLE," Pl. Mem. at 7 (emphasis in original) (internal citation and quotation marks omitted), allegations regarding additional uses of WE THE BEST-formative marks will have no impact on discovery, which has included all uses of WE THE BEST by defendants, *id.*

Opposing this amendment, defendants make three primary arguments. First, they contend that plaintiffs could have formulated their original allegations in this fashion and did not act diligently in later seeking to do so. Def. Mem. at 3. Second, defendants argue that permitting new variants of violating conduct to justify amending a complaint could, in theory, support a broad array of amendments. Third, defendants argue that this amendment is futile because defendants' hashtag use does not constitute trademark infringement.

11

The Court is again not persuaded and finds that plaintiffs acted diligently in seeking to thus amend. Plaintiffs notified defendants of their intention to amend in this manner almost immediately upon discovering defendants' new acts of infringement, and moved to amend within two months. These actions were made with satisfactory dispatch. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 456–458 (S.D.N.Y. 2012) (plaintiff acted diligently in moving to amend two months after learning new facts); *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 360–61 (S.D.N.Y. 2014) (plaintiffs acted diligently in moving to amend approximately four months after learning new facts, where plaintiff had alerted defendants and court to facts supporting amendment within one month of learning of them).

The proposed amendment is also not prejudicial. It would not "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citation omitted). On the contrary, plaintiffs represent, and defendants do not dispute, that no additional discovery would be needed, insofar as the claims regarding continued use of other WE THE BEST-derivatives between November 2018 and January 2019 are premised on the same theory of illegality as in the initial Complaint.

Finally, contrary to defendants' argument, the proposed amendments are not futile for failure to state a claim of trademark infringement. *See Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *see also Gorham–DiMaggio v. Countrywide Home Loans, Inc.*, 421 F. App'x 97, 101 (2d Cir. 2011) (summary order). The initial Complaint contains allegations of infringing hashtag use. Compl. ¶¶ 3, 45, 69, 82. The PAC merely alleges other variations of the same infringing practice, and defendants have not claimed that the original allegations as to infringing hashtag use failed to state a claim. A proposed amendment that does

not advance a new theory, but rather adds new examples of an already alleged practice, does not implicate new legal issues warranting a fresh assessment of futility.

In any event, plaintiffs' allegations—old and new—as to defendants' use of hashtags clearly state a claim of trademark infringement. Trademark infringement exists where a defendant's use of a plaintiff's trademark "is likely to cause consumers confusion as to the origin or sponsorship of defendant's goods." *Savin Corp. v. The Savin Group*, 391 F.3d 449, 456 (2d Cir. 2004). The Complaint and PAC both adequately allege such confusion, and numerous cases have permitted claims of infringement based on uses of protected marks in hashtags to go forward. *See, e.g., Chanel v. WGACA, LLC*, No. 18 Civ. 2253 (LLS), 2018 WL 4440507, at *2 (S.D.N.Y. 2018) (plaintiffs plausibly alleged that defendant's use of hashtag #WGACACHANEL was trademark infringement); *see also Pub. Impact, LLC v. Bos. Consulting Grp., Inc.*, 169 F. Supp. 3d 278, 294–295 (D. Mass 2016) (use of hashtag #publicimpact likely infringed on plaintiff's PUBLIC IMPACT trademark); *Fraternity Collection, LLC v. Fargnoli*, No. 3:13-CV-664-CWR-FKB, 2015 WL 1486375, at *5–6 (S.D. Miss. 2015) (use of #fratcollection and #fraternitycollection could plausibly infringe on plaintiff's FRATERNITY COLLECTION trademark).

The Court therefore grants plaintiffs' motion to amend the Complaint to add claims of recently discovered uses of the WE THE BEST mark by defendants.

C.  **Revision of Statutory Basis for Right of Privacy Claims**

Plaintiffs' finally seek to replace their right of privacy claim, presently brought under New York law, with right of publicity claims under Florida law. As to this amendment, the Court finds a lack of diligence. The factual basis for the Florida claim is that Florida is plaintiffs' residence. But plaintiffs necessarily have always been aware that Khaled and his son

13

are Florida residents and that ATK is a Florida corporation. Indeed, plaintiffs themselves note that "the factual allegations . . . for right of publicity violations under Florida law are substantively identical to those alleged in . . . right of privacy claims under New York law." Pl. Mem. at 7. Instead, plaintiffs belatedly came to appreciate that, if brought under New York law, their claims might stand on shaky footing.

Plaintiffs' failure earlier to investigate adequately the elements of the cause of action they brought does not justify an amendment out of time. *See Sokol Holdings, Inc. v. BMB MUNAI, INC.*, No. 05 Civ. 3749 (KMW) (DF), 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) ("[E]xamples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline."). Plaintiffs were responsible, before the deadline for amending, for sizing up the viability of their claims, including whether reformulated claims under a different state's law might have greater potential. That defendants—or the Magistrate Judge—educated them at a post-deadline settlement conference as to potential legal infirmities with the existing claims does not justify permitting an amendment. On the contrary, permitting delinquent amendments under these circumstances would discourage adversaries from candidly revealing their legal evaluation of claims at settlement conferences.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to amend is granted in part and denied in part. Plaintiffs may add (1) a claim for cancellation of defendants' Trademark Registration for ASAHD COUTURE and (2) allegations concerning additional infringing uses of the mark WE THE BEST committed after the initial Complaint was filed. Plaintiffs may not, however, amend their right of privacy claims. The Court directs plaintiffs to file their PAC,

consistent with this Opinion, on the docket of this case within three business days. The Court respectfully requests that the Clerk of Court terminate the motion pending at Dkt. 33.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: April 29, 2019
 New York, New York